Our next case on the call of the docket is agenda number 7, case number 115035, Joseph E. Prazen Appley v. Marvin Shoop Jr. et al. Appellants. Counsel for the Appellant, please proceed. May it please this Honorable Court, Counsel, my name is Beth Janicki Clark. I am the Associate General Counsel for the Illinois Municipal Retirement Fund and I am representing the Defendant's Appellants in this case. This matter involves the interpretation of Section 7-141.1 of the Illinois Pension Code. That's the section that provides for a mechanism of early retirement for IMRF members. It basically provides a means for an enhanced pension in exchange for early retirement of those members. And Subsection G of that section is the forfeiture provision that's contained therein. Subsection G provides, in pertinent part, an annuitant who has received any age enhancement or creditable service under this section and thereafter accepts employment with or enters into a personal services contract with an employer under this article, thereby forfeits that age enhancement or creditable service. A quick review of the person- Which of these did the plaintiff do? Which was violated here, personal services contract or IMRF employer? Well, that's the issue in this case, Judge, is the appellate court has decided that those two terms should be strictly construed, personal services contract and employment with. The appellate court says employment with is the same thing as employee under the pension code. IMRF disputes that. IMRF didn't make a specific finding that the plaintiff in this case entered employment with or personal services contract. The finding of IMRF under this case was that what plaintiff did by retiring and reaping the benefits of an early retirement incentive, he was able to retire prior to reaching the standard retirement age for IMRF members, which is 55. The plaintiff actually retired at 52. And during the 10-year period in question, his pension was increased by more than $300,000 than what it would have normally been under the pension code. IMRF didn't find that he entered into either because IMRF believes that those terms are vague. What IMRF found is that what the actions in creating the corporation, contracting with the city, and the timing surrounding that, it was 13 days before he retired, the corporation was created, and then three days later it entered into a contract with the city. The timing surrounding that made it look to IMRF as if it was a guise to avoid. So that brings up the question whether or not you have the power to determine that ECL was created as a guise to avoid the ERI statute. Yes. That does bring that question, and that is one of the questions that the appellate court found that the IMRF did not have this authority. IMRF disputes that. IMRF believes that it didn't act outside its jurisdiction in finding that ECL was a guise to avoid the return to work prohibitions contained in subsection G. We would have to find an ambiguity, wouldn't we, to agree with your argument and IMRF's position, right? Absolutely. You would have to find an ambiguity, and I think there is an ambiguity in the statute. If you look at the terms employment with and personal services contract, employment with isn't defined in the pension code, and neither is personal services contract. The appellate court said, well, we'll apply the term employee because that necessarily is implied with employment with. And that is not the case. The statute says employment with. It doesn't say employee. If the General Assembly had intended it to mean employee, it would have said employee because that term is defined in the pension code. Instead, it said employment with, and that's undefined. However, if you look at the Black's Law Dictionary definition of employment with, it's work for which one has been hired and is being paid by an employer. That doesn't necessarily imply a common law employer-employee relationship. And that, therein lies the question, is what is meant by employment with? The same thing with personal services contract. The appellate court said, well, it's not vague. We can look to the San Filippo case, which is a Missouri Court of Appeals case. And that case said a personal services contract, you look at the nature of the contract. What does it call for? Does it have to be fulfilled by the promissor only? The San Filippo case isn't really instructive because it doesn't say do you look at the legal status of the contracting party. In this case, the legal status of the contracting party was a corporation. Could that still be a personal services contract? If you look at the agreement itself that ECL had with the city, I think it could. But IMRF didn't determine this. They determined it was a guise because they really felt that there was an ambiguity within those terms of the statute. Where in the statute does IMRF have the authority to make that determination? IMRF has a real general broad grant of authority. If you look at section 7-200 of the IMRF article of the pension code, that provides that IMRF has the power to make administrative decisions on participation and coverage, and this is the important part, which are necessary for carrying out the intent of this fund in accordance with the provisions of this article. And because IMRF found an ambiguity, IMRF looked to the legislative intent of the ERI retirement statute. The statute as a whole, you know, it's intended to provide a benefit for retiring early. The whole goal behind the statute is to get these senior employees off of the municipal payroll, local government payroll, in order to bring in either nobody or someone at a lower salary to save money. The court in subsection A of the statute sets out, I think it's seven findings and declarations which are specific. They say, you know what, we're operating, our local governments are operating under financial crisis. Here's a mechanism for you to go in and, you know, get rid of the top heavy, well-paid people and bring in some either, not bring in anyone, or bring in someone at a lower salary in the court. So this case turns on how deciding what was the legislative intent. Yes, I think it does, Judge. I think the legislative intent is very, the statute is unique because it actually does set forth the findings and declarations of the General Assembly in saying, hey, you know what, this is a cost savings mechanism for local governments. It's intended that most of the people that take this incentive really should retire. If you're going to be getting an added bonus or you retire early in exchange for additional amounts added to your pension, you don't, in the case of, in this particular case, Mr. Crazen was 52. He bought five years. He was able to retire at 52, although the standard retirement age is 55. And for every year over 20 years, you get an additional percentage added on to your pension, so he was able to retire at a higher rate of pension than he normally would have been. Does the appellate court's finding allow the board to determine if something is a guise, would essentially render 141G superfluous? Did the appellate court say that there would be a, if it would render it superfluous? You know, the appellate court does say that, and I disagree with that. I don't think it renders it superfluous. I think you have to look at the terms together, employment within personal services contract. But what was the General Assembly thinking when they put those terms within the statute? Well, I think that they were thinking, we really want these people to retire and we don't really want them coming back to work, but if they do in some capacity, whatever that is, and even if it is incorporating yourself as a corporation and returning to work, that in that event, they shouldn't benefit from the incentive that they got under the ERI statute and that should be forfeited to IMRF. IMRF has never argued that Mr. Crazen wasn't entitled to his pension. He is definitely entitled to his pension. What IMRF's position is, is that Mr. Crazen is not entitled to the portion of the pension that's attributable to his ERI retirement. That $300,000 and change, that was added onto his pension for taking the early retirement because when you look at the facts of this case, it seems abundantly clear that he created this corporation. The life of the corporation was in essence the life of the contract with the city. It seems clear from the facts of the case that the whole reason that ECL was incorporated was to get around the return to work provisions of the pension code. Speaking of the facts of the case, what about comment on the plaintiff's attorney contacting IMRF three times and that whole situation? Yes, there were three letters that were submitted to IMRF that are part of the record. The dates of those three letters vary. One was, I believe, at the beginning of his ERI retirement and another one was sometime in the middle when his wife then took control of the corporation. And then there was one very near that exact same time. I think it was in 2008 or 2009. I can't remember the dates, but those are all in the brief. Where there was the final letter that was written to Mr. Crazen from Mr. Schweikert said that IMRF didn't tell him that the corporation could not just be a guise to avoid the IMRF regulations and that Mr. Crazen should try to run some ads or maybe hire an employee for however long. And he doesn't come out and say in order to avoid looking like it's a guise, but that seems to be the intent of that final letter. But those letters, you know, they are one side. There's no evidence that was submitted regarding what Mr. Schweikert actually told the customer service representatives that he talked to on the phone, the questions that were asked, the scenarios that were presented. There was nothing in the record regarding that. So IMRF really took a lot of those letters with a grain of salt. But the final letter does refer, and it refers to the word guise, which is what IMRF found, even though it was several years later, and that shows that IMRF has consistently interpreted. And going back to my first question, though, as far as technically, I mean, if we just look at the language, the plaintiff was not employed with the city. You would agree that I know the guise is what they came up with, but what is it, ECL? That the employment was between ECL and the city. And as far as the personal service contract is concerned, which is the second way they could have gone, under the statute, if we do find a plain reading, there's nothing to suggest that somebody else couldn't have performed the services that ECL performed, and it only had to be the plaintiff in this case. I mean, you'd agree. I would agree with that, but when you add the facts of this case. Yeah, I'm just trying to understand. So your basic position is we find an ambiguity, we go to the legislative intent, and even under this fact scenario that you've just articulated, then we find, if we agree with your argument, that the IMRF could then find the guise, because it's to just try to prevent this situation regardless of the technicalities involved in the language. Right. The IMRF was attempting to do what it thought the legislature intended with this section, and it seems absurd that a person could retire and create a corporation and then the day after his retirement start as a contract employee with that corporation. I don't want to put words in opposing counsel's mouth, but how do you address the fact that most likely they're going to say the words are what the words are, and if that's what they wanted to do, they can certainly amend the statute after your rule, but here's what it says. Any statute can be amended at any time, obviously, but the words I don't think are what the words are. I don't think that is the intent. I think the words are vague. I think the words are ambiguous. It's not employee as defined in the pension code, although that's what the appellate court says. Nowhere within that statute does it say employee. It says employment with. That could mean something other than a common law employee. Is there a specific legislative history you've referenced legislative intent? Is there a specific history that you rely upon for that? I actually searched to see if there were any debates regarding the ERI statute. The ERI statute originally was passed before it added in municipal employees, so I looked at the first time it was passed when it didn't include municipal employees and then when the exception for municipal employees was removed, and there was no pertinent legislative intent that I could find discussing what the intent behind this was. You're saying we should assume it or imply it? I'm saying that if you look at the legislative intent that's set forth clearly in subsection A of the statute, which it says, you know, the General Assembly hereby finds and declares, and it goes through seven different things talking about why they're passing this ERI legislation, that when you look at that and you look at what happened with the plaintiff, you can't help but come to the conclusion that even though the General Assembly didn't specifically say within the statute, hey, you know what, we don't want people to self-incorporate and then the next day go back to their same employer, and in this case pretty much the same job, and collect an incentive for retiring early. It's absurd. It doesn't make any sense. So I think if you look at the statute as a whole and the intent of the General Assembly, which talks about, you know, providing this economic incentive for financially distressed municipalities and getting these people off the payroll, the intent is that they really expected them to retire, and in this case it seems the facts, I believe, are very clear that what happened is it was a way for him to collect a higher pension and go back to the same job for ten more years. Is it significant to our analysis the fact that the IMRF board did not make the findings of employment with or personal services contract, avoided the use of the language, but just said guys under the guise of, would it be simpler if they had made that finding, or can an argument be made that the board didn't even comply with the statute and therefore the rule should be overruled? You know, the IMRF board is an administrative agency. It's obviously not held to the same standard as the judiciary when it makes a decision. I think they looked at it, you know, well, he's a corporation. Is he employment with or personal services contract? We don't know, but we think what he did is a guise, and he, you know, he violated the intent of the provision. So I don't think it matters specifically that IMRF didn't find one of those two things. I think if you look at Section 7200, which gives the general authority to IMRF to make administrative decisions on participation and coverage, which are consistent with the intent of the fund in accordance with the provisions of this article, that that gives them the authority to say, hey, but you know what? We do think that this is what the General Assembly wanted in this case. The appellate court decision should also be overturned because it results in an absurdity. The statutes are to be construed to avoid absurdities, and in this case the absurd result is that it provides for an enhanced financial incentive to retire, yet it allows an individual to self-incorporate and return to full-time work with the same employer while receiving an enhanced pension. The appellate court decision also creates a loophole that is contrary to public policy. There's approximately 6,000 IMRF ERI retirees across the state of Illinois currently. This case creates a loophole, and it basically shows them how to go back to work while collecting their enhanced incentive without losing that incentive. Public policy is defined as judicial decisions, legislation, and constitutions, as well as customs, morals, and notions of justice that prevail in a state. I believe that reasonable persons would find that to collect an enhanced pension and return to full-time work under a contract with your former employer is fundamentally unfair, and the appellate court's decision is against public policy. Thank you. Thank you, Ms. Clark. Thank you. May it please the Court. For the record, Jim Fahey on behalf of Joe Prasin. This matter comes before you today on a simple case of administrative review. The decision at issue is IMRF's finding that Joe Prasin violated Article 7 of the Illinois Pension Code, thereby forfeiting a substantial portion of his pension without a finding of either he was employed with or he had a personal services contract with a participating entity. Instead, as you have just heard, IMRF ruled that he violated the intent of the early retirement incentive provisions when he created Electrical Consultants Limited shortly before he retired as a purported guise to circumvent the return to work provisions. So the immediate issue before this Court is really quite simple. Can they? Whether their interpretation and application of the forfeiture provisions are supported by law, and that's subject to the noble review. As a sub-issue of that, this Court also has to decide whether IMRF has the necessary equitable powers, typically reserved solely for the courts, to completely disregard a legal entity and somehow find he violated those express and explicit provisions identified in the forfeiture statute. What about Section 7-200? Sure. I'd love to address that. Section 7-200, it's a grant of general power to make determinations. As this Court's well aware, if you have specific provisions explicitly included in the statute, they trump general grants of power. They carry out the intent. Okay. Let's talk about the intent. They cite Section 109, 5109, which is the general auditory provisions, if you will, the pension code, and what the intent is under Section 7. And then they jump all the way down to 200 and say, well, if you read those intents and you read Section 200, we have this authority. Well, that makes everything else in the statute superfluous. They're a legislatively created entity. They only have limited powers. Those limited powers are here's the end of your ballpark. If you're going to forfeit someone's salary, it has to be because they're either employed with. If we disregard 7-200, we still have to determine the intent of the legislature. Do you agree that that's the crux of this case? No. No. And here's why. And this is really the important part. And as this case has evolved, and believe me, I encourage you to look at what happened in the trial court and the appellate court and our briefs. Because they never ---- That helps us with the intent of the legislature. If they would have decided the person was employed with, if they would have decided that Joe Prezen was employed with or had a personal services contract, then I think we'd get into a tent debate. Because what did the legislature intend when they used those terms? They didn't do either one of those. If they would have, the argument before you today would be a lot different. All we'd be arguing about is whether they possess equitable powers. They have a very specific proviso, explicit, as to what is required, two criteria for you to forfeit. They didn't use either one of them. And they purposely decided not to use either one of them. And they said, instead, intent. We're going to divine tea leaves, if you will. We think this is really what it's required. Where does that stop? Mr. Fahy? Yes. Let's look at the absurdity argument made by counsel. Would, if we affirm the appellate court here, would our determination, our opinion, stand for the proposition that a retiree merely has to retire and incorporate himself and move on from there? Okay. And let me confess right away, is this statute a problem for IMRF? Oh, yeah. I fully recognize that. But to more specifically address your question, their argument is, hey, if you rule in Joe Prasin's favor, you're going to create a road map on how to get away with this. All you have to do is self-incorporate. Really? Is self-incorporation that easy? You file your $600, you become incorporation. But that's not what happened in this case. What happened in this case is he followed every corporate formality there was. There is a whole binder in this, meeting minutes, taxes, payroll, annual reports, everything you could possibly do to run a lawfully created, operated and maintained corporation. But don't you concede that Mr. Prasin himself could perform, he himself was the only one who could perform the duties? His wife couldn't and his daughter couldn't. So really isn't that, you know, part of the corporation piece there? I mean, he may be incorporated, but he was the only one who could perform the personal services. Okay. No, I don't agree with that. And I have several reasons why I don't agree with that. First of all, if you look at the contract, in no way, shape or form was Joe Prasin himself obligated to perform any of those obligations. They say there was only three employees in the corporation. That is true. There were only three employees. But that presumes corporations don't go out and actually hire people as contract workers to perform functions. Did they in fact do that? They did that, but that's not in the record. Because, again, an administrative review, as most of you know who have practiced, you kind of pile in stuff into the administrative record in hopes that you're addressing what's at issue. We would have never thought we'd have to get to the point where we're defending Prasin in a corporate bail on an administrative proceeding. Was the plaintiff ever actually replaced? Was his job filled with the city of Peru after he retired? No. And thank you for bringing that up. As of today, there is no superintendent at that facility. When ECL stopped their contract, they went and hired another contractor who performed those technical functions. When we talked about legislative intent, let's get into legislative intent. Before you do. I'm sorry. Before you do, I just want to get back for a minute to follow up on the absurdity thing, because that's also a statutory construction vehicle. And, again, I appreciate your candor that IMRF has problems with this statute. And I just want to go back to my initial question. If we agree with the appellate court in your position, will it stand for the proposition, following dotting the I's and crossing the T's, accept it? I mean, the fact is that if someone goes out and formally incorporates themselves, keeps the minutes, does everything that they're required to do, does a retiree merely have to do that and can go back to their same exact position that they retired from and collect the enhanced pension as well as working in the same capacity now incorporated? Right. It creates what I would call a factual absurdity. It creates a political absurdity. But in no way, shape, or form does it create a legal absurdity. When the legislature enacted this early retirement provision, they explicitly picked two criteria. The rules of statutory construction are the expression of some specific factors means we have to presume they've contemplated other factors and did not include those. So, sure, as I sit here today, I will not ever deny that as I look at it from a factual standpoint, it's something that requires a remedy, but you can't remedy it through administrative fiat when you don't have the authority to do so. You can't remedy it through judicial fiat. There's a remedy. It's over there. Pass legislation. And here's why it has to be legislation. Exactly where in the continuum does this, let's say it's a decision, a rule by a decision, where exactly do you draw the line on this? Does it just apply if you self-incorporate immediately before you retire? Does it just apply if it's a family business? Okay, let's say it applies to family businesses. Well, fine, I go get someone else to be my straw man. You get a stipend. Here's the deal. They're going to hire me back, but you create the corporation. Let's say it's Commonwealth Edison because we're talking about a public utility here. I work in a public utility. I go to Commonwealth Edison. If you hire me to do this job that I used to do, well, fine, you get a stipend. Where exactly is this line being drawn on the continuum? That's what's wholly impractical about this. And more importantly, what's wholly inequitable about this is this guy's theory. That letter didn't go out until four years after the contract was entered into. But, Mr. Fahy? Yes. This Court has repeatedly held that the reason for a law, the problem sought to be remedied, and the purpose to be achieved are very relevant in interpreting the statute, even when it is unambiguous. Why can't we not look at those factors here, ones that are stated? You can look at those factors. But there's a lot of other things that I think take priority over that. For example, pension statutes are supposed to be construed in favor of the pensioner. Penal statutes, this is a forfeiture, have to be strictly construed. Also, from this Court in County of Knox versus Manchester versus Highland, the words, they must be given their effect by the courts, even though the consequences may be harsh, unjust, absurd, or unwise. Such consequences can be avoided only by a change of the law, not by judicial construction. And for your law clerks, the site is 188 Hill Second, 546. In short, you know, again, I can't say this enough. Do they have a problem? Yeah. You can't solve that problem on the back of a single pensioner. Pass some legislation. Pass a regulation. And do so by actually advising the annuitants what they can and what they can't do. Mr. Fay, let me go back to the beginning of your argument. You said this is a simple case of administrative review. I think that was in your opening sentence, right? Yes. This record comes to us, and maybe it would be a paraphrase, but this record comes to us out of that administrative review proceeding, correct? Correct. Under the Illinois Administrative Review Act? Correct. And under the Act, if I recall correctly, findings of fact by the administrative agency are deemed prima facie true and correct. Correct. They have to be against the manifest weight of the evidence. So what is your argument on how the facts that the board relied upon are against the manifest weight of the evidence? Thank you. The primary one is this whole case has been built around the contemporaneous creation of the corporation. What are the facts in the record that shows the manifest weight? It has been argued in the appellate brief that he went back to the same job, the exact same job that he had. There's no way you'll find that in the record. In fact, when you look at their decision, they avoid it. They're just saying he returned to work there. Because when he was superintendent, he had powers to hire and fire, train, supervise performance appraisals, prepare budget, things like that. When he became, when ECL took over, superintendent, I'm sorry, strike that. When ECL took over contract functions, only some of those are what the superintendent previously performed. And some of those were technical consulting as they related to public utility. In other words, you have a guy who had certain knowledge, or there are other people in the industry who have certain knowledge, and we're going to hire out for that. If the goals of this administration, I'm sorry, if the goals of the pension code were to eliminate that position, mission accomplished. If the goal was to eliminate that position and save money, good, mission accomplished. We got rid of the highest paid salary. We got rid of the position. We now don't have to pay pension benefits, health benefits, vacation. We can terminate on a three-day's notice. We have no employee-employee relationship. How is that not beneficial and consistent with the statutory intent? The real problem here, and again, I don't dismiss it, it's a political one. They have a guy who went to work for a corporation he formed who returned that corporation and entered into a contract with the city. They don't like it. It seems unfair. I don't disagree with it. Is it unlawful? No. Could someone do it today? I think they could under the existing law. I'm sorry. No, no. I was just, and I know it's not dispositive of your argument because you don't care if they call it a guys or not. You're saying they're not allowed to do that. But can you go through just the factual circumstances of what I believe was the third letter with respect to the reference to guys? Sure. I'm going to go through those. But just to remind you, this went into effect in 1997 as it applied to municipality. Everyone was trying to figure out what was going on. He retired at the end, I mean, in 1998. So this was new. As part of that, his attorney sent a letter on September 19th, 1998. I think it was two months. Well, that would have been, he retired in December. So several months before he retired saying, hey, IMRF, what can I do, what can't I do? And to IMRF's defense, they're trying to figure it out, too. He then sends a second letter, Prazen's attorney, on 3-2002, saying, hey, I'm just trying to double check. You know, now the law's been in effect in a little while. Anything new that I need to worry about? And then you see the results of the letter. And then finally, in November, I think it was 19-2002, there's a third letter from IMRF. For the first time, they use some language. Well, they don't use it. Attorney Schweikert uses the words, you can't be a guise. So now we're talking about four years after he entered into the contract. They're saying, oh, by the way, you can't be a guise. And to take legal advice from your attorney? I mean, he did what everyone should do. He went and got legal advice. To take that as your attorney's teaching you how to beat the system? Well, my God, what else are you supposed to do here? That's exactly who you go to. And his attorney's advising him, well, you know what, I talked to IMRF again. And, you know, these are things to make sure you stay compliant with the law. These are all the things you do to keep your corporation in perfect working order. He did all those things. And then when he closes the corporation and he literally retires from all work, I think it's seven months later, IMRF sends him a letter, and they don't say, hey, you create a corporation as a guise. What are they saying in their letter? And please look at this. We find you forfeited your pension because you have a continued relationship with your former employer. We go into the hearing saying, well, you know, we've read the statute. I don't see continued relationship anywhere in there. So what is it? And we go through the administrative hearing. No, they don't, and I'll never make this mistake again, they don't transcribe those hearings. So literally you're just dumping in paper, and there's no evidence presented by IMRF except for a single letter, I'm sorry, except for a single article which they tell us about orally in American Energy Weekly saying that Joe Prezen had just retired as superintendent. Now, they tell us that orally, but they don't give us anything or even the basis for it other than a continued relationship that say, you know what, you're right, you're entitled to that. We're going to have another hearing. I mean, how is, if you're going to put a rule in place, the reason why you put rules and statute in place is to advise people on how to conduct their life. There is no way that he would have ever thought, looking at the statute, or any attorney would have thought looking at the statute, that somehow IMRF could come back a letter and just say, you know what, we get to decide what the intent of the legislature was, and even though the legislature specifically articulated employed with a personal services contract, we think there are other exceptions, and ours are consistent with those. They look like those, so this should be okay. How is that advising any of those other annuitants how they're supposed to conduct themselves? You're literally guessing. Let's get to the last, well, let's get to this issue just so I can address it because it looks like you've exhausted your questions, and I'm sure I'm about ready to run out of time. Equitable powers. This troubles me immensely because I must confess, I don't quite understand IMRF's records. I don't see how this isn't piercing the corporate veil, and by way of example, let me explain to you. If the city of Peru had an issue with ECL, if ECL breached the contract, there is no way they could ever reach through ECL under the facts in this case and get to Joe Prasin for personal liability. It wasn't a personal services contract with him. He wasn't liable for it. It was ECL. If the city of Peru went to court, no court would have the power under the facts in this case to get through ECL to get to Joe Prasin, but yet somehow an administrative agency has this power? To simply bypass a corporate entity, totally disregard it and say, well, we're not really worried about them, even though it is the corporation that entered into the contract. We're going to go straight after the person who incorporated it. Again, I conclude with there's a problem here, okay? But they have to solve the problem legislatively, and based on the statute as it currently exists, there's no way they have the authority to ignore this explicit provisions that are in the forfeiture code and come up with their own idea of what the intent is. There's no way. Thank you very much.  Rebuttal. Thank you. With regard to the liberal construction canon that was cited by the plaintiff, which says that pension statutes should be liberally construed to favor the pensioner, this case is definitely a different situation than those. This involves a voluntary choice by a member and the receipt of an enhanced pension. In exchange for the enhancement, the member must abide by these certain rules relating to their retirement. If the rules are broken, they forfeit only the enhancement and not their entire pension. In addition, the liberal construction canon does not trump the rules of statutory construction. If the legislative intention is obvious from the language used in a pension act, the pension should be made effective. That's the Roselle Police Pension Fund versus the Village of Roselle case found by this court. And in Roselle, a widow was deemed not entitled to an annual benefit increase because nothing within Article III clearly allowed it. This court found that there was no legislative intent to provide that benefit increase to the widows in that case. In addition, with regard to the fact that the plaintiff deems that this is a penal statute, this is not a penal statute, and the rule that says that penal statutes must be strictly construed is wrong for two reasons. First, this isn't a penal statute in the traditional sense. Most of the cases that talk about penal statutes and strict constructions are cases that interpret the criminal code. The plaintiff cited one case in his brief, Sinks v. Kimmel, which was a penalty case that dealt with a fine for failure to release a mortgage. This is different from a fine. It's a forfeiture of a benefit. It was voluntarily entered into. But even if this court were to say that the forfeiture provisions of 7-141G are penal in nature, there's a case, People v. Bratcher, which dealt with the aggravated battery statutes. There was an inconsistency between a sentencing provision that was contained within that statute and the general sentencing provisions for Class III felonies. The sentencing provision within the statute said it was a 1-3 year sentence, but the general sentencing provision provided that it was a 1-10 year sentence. The court found that the proper sentence was 1-10 years. Despite the clear indication otherwise, they ignored the legislative intent, and the statute was strictly construed in favor of the accused in that case, despite it being a penal statute. With regard to plaintiff's argument regarding piercing the corporate veil, I think that's a red herring in this case. Piercing the corporate veil is when you seek to hold an individual liable for the acts of a corporation. In this case, it's not the acts of the corporation that are the problem. It's the acts of the pensioner. It's the acts of Mr. Preysen. Mr. Preysen created this corporation, ECL, for the purpose of allowing him to go back to his old job. And I know the plaintiff disputes that he didn't go back to the same job, but I think if you look at the agreement, the agreement for the management and supervision of the Electrical Department of the City of Peru, and you look at the duties under that agreement, it is in the nature of what a supervisor of the Electrical Department would do. Now, we would never know that because IMRF contacted the City of Peru, and the City of Peru does not have a job description for the superintendent of the Electrical Department. With regard also to plaintiff's argument that the IMRF should pass legislation, there are plenty of statutes in this state that are vague. Should the IMRF, or anyone for that matter, have to pass legislation every time a statute is vague? If the legislation contains the clear intent of the General Assembly, as this statute does, there's no need to pass legislation. What the plaintiff did was clearly meant or intended by the General Assembly to be a violation of this section. And the IMRF asks that you uphold the decision of their Board of Trustees and order the forfeiture of Mr. Preysen's ERI enhancement. Thank you. Thank you. Case number 115-035, Joseph E. Preysen, I believe, versus Marvin Shoup, Jr., et al. Appellants is taken under the advisements agenda number 7. Ms. Clark, Mr. Fahey, thank you for your arguments today. You're excused.